# DET 127158

46

## IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF MICHIGAN

City of Flint,

      Plaintiff

v.

Austin Morgan Companies, et al

      Defendants.

Case:2:19-cv-13543
Judge: Berg, Terrence G.
MJ: Hluchaniuk, Michael J.
Filed: 12-02-2019 At 12:02 PM
REMOVAL- CITY OF FLINT v AUSTIN MOR
GAN (sk)

**NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C.§1331**

---

## NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant, Austin Morgan Companies, through its sole owner, Christina Rasins, in pro se capacity hereby removes to this Court the state court action described below.

1. On October 9, 2019 an action was commenced in the Circuit Court of the State of Michigan in and for the County of Genesee entitled City of Flint vs. Austin Morgan Companies, as case number 19-113048-CH.

2. The first date upon which defendant received a copy of the said complaint was October 30, 2019, when defendant was served said complaint and summons from said state court by way of tacking to defendants door. Pursuant to 28U.S.C§1446(b), this notice has been timely filed. A copy of the summons, complaint and Orders served

upon Defendant in the state court action are attached hereto and referred to collectively as Exhibit "A".

3.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C.§1331, and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C.§1441(a) in that it arises under the National Environmental Policy Act 42U.S.C.4331.

4.      The undersigned defendant is the only named defendant in the state court action referenced above in paragraph 1 of this notice.

WHEREFORE, Defendant Austin Morgan Companies prays that this action be removed to the United States District Court for the Eastern District of Michigan.

Respectfully submitted,

Austin Morgan Companies
Christina Rasins, In Pro Se
PO Box 1159
Flint, MI 48501
248-770-4796
Eml: info@austinmorgan.com

DATED: DECEMBER 2, 2019

EXHIBIT 'A'

| STATE OF MICHIGAN | | | |
|---|---|---|---|
| | JUDICIAL DISTRICT | ORDER REGARDING | CASE NO. |
| 7TH | JUDICIAL CIRCUIT | ALTERNATE SERVICE | |
| | COUNTY PROBATE | | |

Court address: 900 S SAGINAW ST, FLINT, MI 48502

Court telephone no.: 810-257-3220

Plaintiff name(s), address(es) and telephone no(s).
CITY OF FLINT
1101 S SAGINAW ST
FLINT, MI 48502

810-766-7146

v

Defendant name(s), address(es) and telephone no(s).
AUSTIN MORGAN COMPANIES LLC
AUSTIN MORGAN COMPANIES PARTNERSHIP
CHRISTINA RASINS
1602 CRESCENT DR
FLINT, MI 48503
936 E BOULEVARD
FLINT, MI 48503

Plaintiff's attorney, bar no., address, and telephone no.
ANGELA WHEELER                    P-74079
1101 S SAGINAW ST
FLINT, MI 48502

**THE COURT FINDS:**

1. Service of process upon the defendant, CHRISTINA RASINS **of Austin Morgan Companies**

   cannot reasonably be made as provided in  ☑ MCR 2.105  ☐ MCR 2.107(B)(1)(b)  and service of process

   may be made in a manner that is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity

   to be heard.

**IT IS ORDERED:**

2. Service of the  ☑ summons and complaint  ☐ other _____

   and a copy of this order shall be made by the following method(s):

   ☑ a. First-class mail to 1602 CRESCENT DR, FLINT, MI 48503

   ☑ b. Tacking or firmly affixing to the door at 1602 CRESCENT DR, FLINT, MI 48503

   ☐ c. Delivering at _____

      to a member of the defendant's household who is of suitable age and discretion to receive process, with instructions to

      deliver it promptly to the defendant.

   ☐ d. Other: _____

   For each method used, proof of service must be filed promptly with the court.

3. The motion for alternate service is denied.

**10·23·19**

**JOSEPH J. FARAH**
**P-30439**

MC 304 (9/10)   ORDER REGARDING ALTERNATE SERVICE

MCR 2.105, MCR 2.107

A TRUE COPY
Genesee County Clerk

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 7th   JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | 19-113048-CH |

**Court address**
900 South Saginaw Street Flint, MI 48502

**Court telephone no.**
810-257-3220

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| City of Flint<br>1101 South Saginaw Street<br>Flint, MI 48502<br>(810)766-7146 | v | Austin Morgan Companies, LLC, and the Austin Morgan<br>Companies partnership<br>Chrisitna Rasins<br>PO Box 1159<br>Flint, MI 48501<br>936 East Boulevard<br>Flint, MI 48503 |

Plaintiff's attorney, bar no., address, and telephone no.
City of Flint Legal Department
Angela Wheeler (P64079)
Whitney Frazier-Jenkins (P76632)
William Kim (P76411)
1101 South Saginaw Street, Flint MI (810)766-7146

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

    There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

    There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

    It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

    This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

    MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

    There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

✓  A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in   this court,   _____ Court, where

it was given case number _19113048_____ and assigned to Judge _Farah_____ .

The action  ✓ remains   is no longer  pending.

Summons section completed by court clerk.

| **SUMMONS** |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>**OCT 9 2019** | Expiration date*<br>1/6/20 | Court clerk<br>*Rachel Laux* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01**   (9/19)   **SUMMONS**                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNT OF GENESEE

CITY OF FLINT., a municipal corporation
      Plaintiff,

v

AUSTIN MORGAN COMPANIES., LLC, a
limited liability company, and the AUSTIN
MORGAN COMPANIES partnership.
      Defendant.

Case No. 19-113048-CH
Hon. Joseph J. Farah

---

*For the City of Flint*
ANGELA WHEELER (P64079)
Chief Legal Officer
WHITNEY S. FRAZIER-JENKINS (P76632)
WILLIAM KIM (P76411)
Assistant City Attorney
City of Flint Law Department
1101 S. Saginaw St., 3ʳᵈ Floor
Flint, MI 48502
(810) 766-7146
wfrazierjenkins@cityofflint.com
wkim@cityofflint.com

*Attempting to appear in pro per on behalf of*
*Austin Morgan Companies, LLC, and the*
*Austin Morgan Companies partnership*
CHRISTINA RASINS
Austin Morgan Companies, LLC
PO Box 1159
Flint, MI 48501
(810)407-7495


A TRUE COPY
Genesee County Clerk

---

### FIRST AMENDED COMPLAINT

    **NOW COMES**, Plaintiff, City of Flint, by and through their Attorneys, Angela Wheeler

and Whitney Frazier-Jenkins, and, pursuant to MCR §2.118(A)(1), state the following for its

First Amended Complaint:

### JURISDICTION & VENUE

1. Plaintiff City of Flint (hereinafter "City") is a municipal corporation located in the County

    of Genesee in the State of Michigan.

2. Defendant Austin Morgan Companies, LLC, (hereinafter "AMC, LLC") is a limited liability corporation located in the County of Genesee, in the State of Michigan.

3. Defendant Austin Morgan Companies, the partnership, (hereinafter "AMC Partnership") is a partnership with status as a sole proprietorship, and has operated since January 2017.

4. All acts related to this incident occurred in Genesee County, Michigan.

5. The amount in controversy in this civil action exceeds $25,000.

6. Plaintiff in this matter seeks monetary, injunctive, and declaratory relief.

7. There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in this Complaint.

## STATEMENT OF FACTS

8. Plaintiff adopts all prior allegations as if restated in their entirety herein.

9. The City is the owner of Real Estate located at 936 E. Boulevard, Flint, Michigan 48503. (Parcel ID#: 41-07-204-031).

10. In 2015, the City and AMC, LLC executed a Lease Agreement for the Real Estate located at 936 E. Boulevard, Flint, Michigan. (see Exhibit A, attached hereto and incorporated herein by reference)

11. On Friday, July 12, City sent an email to Christina Rasins, requesting access to the buildings located at 936 E. Boulevard, for the purpose of getting quotes from different contractors in furtherance of planned soil excavation remediation efforts (see Exhibit B, attached hereto and incorporated herein by reference).

12. The City needs to have contractors access the main building on the property to evaluate the feasibility of constructing an additional entrance so that the entity it believed to be AMC, LLC could remain in the building during the soil excavation remediation work.

13. On Monday, July 15, Christina Rasins stated in an e-mail: "Access to our operating buildings by the public/contractors will be denied as it is not relevant to the needs of this situation or any situation, and is an intrusion to our privacy."

14. On July 15, 2019, City again sent Christina Rasins an email requesting access to the building on July 17, 2019, and explained that such access was necessary to explore building another entrance during the remediation.

15. Christina Rasins was also informed that all people entering the property would be the designees of the City and accompanied by City employees.

16. Later that day, in an e-mail at 6:57 PM, Christina Rasins responded that "AMC is only available prior to 11:00 AM on Tuesday, July 16th. Until which time this meeting is held, the Wednesday request at 10:15 am will be considered on hold to lessen the unnecessary intrusions to AMC." The Christina Rasins also stated it was opposed to the potential plan of building an additional entrance.

17. The City explained due to the lack of reasonable notice, it was unable to meet on Tuesday, July 16 and again requested access to the building on July 17, 2019. The City offered additional times and requested that Ms. Rasins provide additional times the City could access the building.

18. Ms. Rasins failed to respond to the City's request for access to the building.

19. City's employees went to the property on July 17, 2019, and were unable to gain access to the main building. The City was unable to verify if creating an additional entrance was feasible during the soil excavation work.

20. The City is now further delayed in conducting soil excavation remediation efforts.

21. On July 24, 2019, a stipulated order was entered by this Court, granting the City access to the main building's garage bay area, to obtain measurements for side entrance to the building.

22. On September 6, 2019, the City sent a Notice of Breach of Lease to AMC, LLC, pursuant to Section IV(3) of the Lease Agreement.

23. Section XI(1) of the Lease Agreement states that "Whenever, under this Lease Agreement, a provision is made for notice of any kind, such notice shall be in writing and signed by or on behalf of the party giving or making the same, and it shall be deemed sufficient notice and service thereof if such notice is sent to either party by registered mail, certified mail, or currier, prepaid to the following addresses: If to The City: City Clerk, 1101 S. Saginaw Street, Flint, MI 48502 Planning and Development, 1101 S. Saginaw Street, Flint, MI 48502; If to AMC: Christie Rasins, PO Box 1315, Clarkston, Michigan 48347.

24. AMC, LLC never notified City of any update to their mailing address.

25. The City sent the Notice of Breach of Lease to AMC, LLC via Certified Mail at the following addresses:

    a. The mailing address for the leased premises: 930 East Boulevard, Flint, MI 48503.

    b. The address listed on previous court filings by Ms. Rasins: PO Box 1159, Flint, MI 4850.

    c. The residential address of Christina Rasins: 1603 Crescent Drive, Flint, Michigan 48503.

    d. The e-mail addresses: info@austinmorgan.com and randy@austinmorgan.com, with which the City of Flint communicates with Austin Morgan, LLC.

26. The Notice of Breach of Lease mailed to PO Box 1159, Flint, Michigan 48501 arrived at the PO Box on September 7, 2019.  Defendant failed to retrieve that Notice of Breach of Lease and the mailing was returned to the City on October 7, 2019.

27. The United States Postal Office notified AMC, LLC on September 9, 2019 and September 14, 2019, that City had mailed a certified letter to 930 East Boulevard.  AMC, LLC failed to retrieve the letter and the letter was returned to the City on September 24, 2019.

28. The Notice of Breach of Lease mailed to 1603 Crescent Drive was delivered on September 9, 2019.

29. On October 7, 2019, Christina Rasins responded to the Notice of Breach of Lease and disputed the breaches listed in the Notice of Breach.

30. Pursuant to Section IV(3) of the Lease Agreement, "If AMC does not comply with the Terms and Conditions of this Lease Agreement, the City may terminate the Agreement by giving AMC written notification that AMC shall have thirty (30) days to cure said default. Upon expiration of this thirty (30) day period and the failure to make such cure, the City shall have the right to use all legal means to remove AMC from the Real Estate."

**COUNT 1: BREACH OF CONTRACT**

31. City adopts all prior allegations as if repeated and restated in their entirety herein.

32. The City entered a Lease Agreement and Landscape Service Agreement with Austin Morgan Companies, LLC.

33. AMC, LLC is a limited liability company registered with the Corporations Division of the Michigan Department of Licensing and Regulatory Affairs.

34. On August 22, 2019, Christina Rasins filed a document entitled "AMC, LLC's Opposition to City's Motion to Strike AMC, LLC's Motion for Extension of Time to File Answer" in this case.

35. Christina Rasins' motion asserted that Austin Morgan Companies, LLC was inactive.

36. Christina Rasins' motion also asserted that the property at 936 E. Boulevard was not occupied by occupied by AMC, LLC, but was instead occupied by the AMC partnership.

37. AMC, LLC is currently not in good standing with the Corporations Division of the Michigan Department of Licensing and Regulatory Affairs but has not been dissolved.

38. Austin Morgan Companies, LLC is a separate legal entity from the Austin Morgan Companies partnership.

39. The Austin Morgan Companies partnership, is now occupying the premises at 936 East Boulevard.

40. Section XIII(1) states, "Any amendment to this Lease Agreement shall be in writing and signed by the Parties."

41. The City never agreed to amend the Lease Agreement to allow the AMC partnership or any other entity to lease and occupy the premises.

42. The AMC Partnership is thus not a party to the Lease Agreement and is trespassing on the property at 936 East Boulevard.

43. The City requests that this court order that the AMC partnership vacate the property at 936 E. Boulevard and allow the City to recover possession of the property.

## COUNT 2: BREACH OF CONTRACT, SECTION X(1)

44. The City adopts all prior allegations as if repeated and restated in their entirety herein.

45. Section X(1) of the Lease Agreement Between City of Flint and AMC, LLC states that, "The City shall have the right to enter upon the Real Estate for the purpose of inspecting the same to determine whether the covenants of this Lease Agreement are being complied with by AMC and for any other reasonable purpose on the part of the City, including to access and retrieve the appliances and other items being stored on the Real Estate."

46. City and the Michigan Department of Environment, Great Lakes, and Energy ("EGLE") requested access to the property located at 936 E. Boulevard to complete limited excavation of contaminated source soils.

47. In the letter dated July 22, 2019, EGLE requested the Consent to Enter Private Property form be returned within ten working days of receipt.  To date AMC, LLC has not signed the access form for the limited excavation of contaminated source soils. The limited excavation of contaminated source soils is a reasonable purpose for the City and its designees to access the property.

48. AMC, LLC has breached Section X(1) of the Lease Agreement by denying the City the access needed to complete the excavation project.

49. The City thus requests that this Court declare that AMC, LLC is in breach of Section X(1) of the lease agreement, terminate the lease pursuant to Section IV(3), and return possession of the Property to the City.

**COUNT 3: BREACH OF CONTRACT, SECTION V**

50. City adopts all prior allegations as if repeated and restated in their entirety herein.

51. Section V(2) states that, "AMC shall make the following repairs, upgrades, and capital improvements under this Lease Agreement:

    a.  Engage in exterior repairs and upgrades to the existing structures including:

    i.  Clean-up and revitalization of landscape, tree trimming and removals, new tree plantings, mulching, horticultural services and the installation of an irrigation system if lawn conditions warrant;

    ii.  Clear, repair and/or replace the Real Estate's perimeter fence line, including the fence line being leveled and cleared up to the fencing, and the installation of a new security gate;

    iii.  Clear and remove overgrowth around property and near structures to maintain the structural integrity of the buildings and provide a maintained appearance;

    iv.  Install asphalt millings throughout property subject to the written approval of the Director;

    v.  Repair and replace exterior building materials to a new condition; and,

    vi.  Repaint exterior of existing structures.

b.  Engage in interior repairs, upgrades, and improvements to the Existing Structures including:

    i.  Upgrade or replace flooring where determined necessary by the Director

    ii.  Repaint and renovate office areas and interiors where determined necessary by the Director;

    iii.  Upgrade and renovate restroom facilities;

    iv.  Installation of a kitchenette and renovation of break room; and,

    v.  Upgrade security, lighting and mechanicals

52. On June 28, 2019, an employee of the City of Flint visited the property located at 936 East Boulevard, Flint, Michigan and observed the perimeter fence line is broken and has a large hole in it near the pole barn. .

53. On June 28, 2019, an employee of the City of Flint observed the storage location exterior building material to have several holes and cracks.

54. On June 28, 2019, an employee of the City of Flint observed the forestry and brush along the property were overgrown and not maintained.

55. On June 28, 2019, an employee observed that the storage location did not have exterior security lighting.

56. On June 28, 2019, an employee of the City of Flint observed exterior buildings were not painted, per comparison of photos.

57. On July 17, 2019, an employee of the City of Flint observed incomplete and exposed wall framing in the interior of the main office building.

58. On July 17, 2019, an employee of the City of Flint observed an exposed electrical outlet in the main office building.

59. As observed by a City of Flint employee all buildings on the premises of 936 East Boulevard are in different levels of disrepair. The Main Building exterior has a missing garage bay door, which is boarded up and not in working condition. The Secord garage has a damaged garage bay door, which is blocked by a Jersey barrier and not in working condition.

60. Section V(3) of the Lease Agreement states, "AMC shall, before performing repairs, upgrades, or capital improvements, submit to the Director a written proposal setting forth in detail the repairs, upgrades, or capital improvements made to the property."

61. The AMC, LLC has never sought the approval or disapproval from Director Suzanne Wilcox for any repairs, upgrades, or capital improvements made to the property.

62. Section V(5) of the Lease Agreement states, "The repairs, upgrades, and capital improvements required under this Lease Agreement shall be completed within three (3) years of the execution of this Lease Agreement.

63. This Lease Agreement was executed on September 23, 2015. AMC, LLC failed to complete the repairs, upgrades, or capital improvements as required by Section V by September 23, 2018.

64. The City thus requests that this Court declare that The City thus requests that this Court declare that AMC, LLC is in breach of Section V(5) of the lease agreement, terminate the lease pursuant to Section IV(3), and return possession of the Property to the City.

## COUNT 4: BREACH OF CONTRACT, SECTION VI(1)

65. Section II(2) of the Lease Agreement states "AMC understands that the property being leased to it is leased to it pursuant to the Landscape Services Agreement between the City of Flint and Austin Morgan Companies (Exhibit B) and the parties are bound by the terms and conditions of said Agreement."

66. Section VI(1) states that "AMC agrees to provide and the City agrees to accepts as rent for the Real Estate, Landscaping Services of two City owned public parks which are Broome Park and Bonner Park as further set forth in the Landscape Services Agreement between the City of Flint and Austin Morgan Companies (Exhibit B)."

67. Section VI(2) states that "[i]n lieu of AMC providing Landscaping Services as set forth in Exhibit B. AMC shall pay to the City a monthly rent of Three Thousand Five Hundred Dollars ($3,500.00).

68. The Mowing Guidelines contained in Exhibit A of the Landscape Services Agreement includes the number of mows Austin Morgan Companies, LLC was to provide, as consideration for leasing the property.

69. In April 2016, City and AMC, LLC mutually agreed to have AMC, LLC mow Mott Park instead of Broome Park, because a portion of Broome Park had become a tree farm. The mowing guidelines for Mott Park, Broome Park, and Bonner Park were provided to AMC, LLC via e-mail on April 25, 2016.

70. The Mowing Guidelines require that Broome Park be mowed 20 times, Bonner Park be mowed 15 times, and Mott Park mowed 16 times.

71. Contrary to the agreed-upon Mowing Guidelines, AMC, LLC only mows its assigned parks twelve (12) times a year, approximately every 2 to 3 weeks, instead of the number of mows set forth in the mowing guidelines.

72. The AMC, LLC has not provided the full scope of landscaping services as required by the Landscaping Services Agreement Mowing Guidelines Exhibit A nor has it paid the monthly rent of Three Thousand Five Hundred Dollars ($3,500.00) in lieu of providing all the required landscaping services.

73. The City thus calculates that the AMC, LLC owes the City of Flint up to $126,000 in back rent due to its failure to satisfy Section VI of the Lease Agreement from May 2016 to October 2019.

74. The City thus requests that this Court declare that AMC, LLC is in breach of Section VI(1) of the Lease Agreement, order AMC, LLC to pay the City the monthly rent it agreed to pay in lieu of providing the agreed upon landscaping services, terminate the lease pursuant to Section IV(3), and return possession of the Property to the City.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment:

1) Declaring that, the AMC, LLC is in Breach of the Lease Agreement and order that the Lease Agreement is terminated.

2) Order that AMC, LLC AMC pay the City the past due rent under the Lease agreement.

3) Order that the AMC, LLC and/or the AMC Partnership vacate the lease premises within 30 days.

4) Awarding to Plaintiff its costs, expenses, and reasonable attorneys' fees incurred in bringing this action pursuant to Paragraph VIII(1) of the Lease Agreement, and

5) Any other relief as the Court may deem just and proper.

**City of Flint**

Dated: October 7, 2019

By /s/

**William Kim (P76411)**
Attorney for Plaintiff
**1101 South Saginaw Street**
**Flint, MI 48502**
**wkim@cityofflint.com**

Exhibit A

## LEASE AGREEMENT BETWEEN
## CITY OF FLINT AND AUSTIN MORGAN COMPANIES

This Lease Agreement, entered into on this _____ day of _____, 2015, is between the City of Flint, located at 1101 S. Saginaw Street, Flint, Michigan 48502 (hereinafter referred to as "City") and the Austin Morgan Companies, LLC P.O. Box 1315, Clarkston, Michigan 48347 (hereinafter referred to as "AMC").

### WITNESSETH:

**WHEREAS,** the City owns real estate within its municipal boundaries located at 936 E. Boulevard, Flint, Michigan, 48503 (hereinafter referred to as "Real Estate") further described in **Exhibit A**, which it intends to lease to AMC, and,

**WHEREAS,** AMC intends to use the Real Estate described in **Exhibit A** to properly maintain, repair, and improve the Real Estate, house and store landscape maintenance equipment on the premises, and conduct all the operations as permissible by local zoning and ordinance, and

**NOW THEREFORE** for good and valuable consideration stated herein the parties agree to the Lease as follows:

### I.    DEFINITIONS:

As used in this Lease Agreement the following terms are defined as follows:

1)    "Director" shall mean the City's Director of Planning and Development.

2)    "Existing Structures" shall mean those structures which are located upon the Real Estate on the date of execution of this Lease Agreement.

3)    "Landscaping Services" shall mean those services described in the Landscape Services Agreement between the City of Flint and Austin Morgan Companies **(Exhibit B)**.

### II.    LEASE OF THE PREMISES

1)    The City hereby leases to AMC, subject to the terms, conditions and provisions of this Lease Agreement, the above described Real Estate for all the operations engaged in by AMC as permissible by local zoning and ordinance and the purpose and terms as hereinafter stated.

2)    AMC understands that the property being leased to it is leased to it pursuant to the Landscape Services Agreement between the City of Flint and Austin

Morgan Companies (**Exhibit B**), and the parties are bound by the terms and conditions of said Agreement.

### III.   LEASED PREMISES

1)   It is expressly understood and agreed that the City is providing the Real Estate AS IS, with all faults, and makes no representations regarding the condition of the Real Estate or its usability for any purpose, including, without limitation, the construction of Improvements.   AMC shall inspect the Real Estate and make all determinations as to its usability for any purpose prior to entering into this Lease Agreement.

2)   It is expressly understood and agreed that the described Real Estate is to be used for all the operations engaged in by AMC as permissible by local zoning and ordinance.   A description of the premises is found in **Exhibit A** attached hereto and made a part hereof.

3)   It is further understood and agreed that AMC shall have the right to a Non-Exclusive Right-Of-Way for the purpose of ingress and egress to and from the Equipment Storage Buildings.

4)   Improvements that become fixtures of the Real Estate shall become property of the City upon the termination of this Lease Agreement.   In addition to the requirements set forth herein, AMC shall obtain approval from the City for all new structures prior to initiation of construction.

5)   Nothing within this Lease Agreement shall be construed as conveying any right(s), without limitation, to Real Estate to AMC.

### IV.   TERM AND TERMINATION

1)   The Terms of this Lease Agreement is for a period of Ten (10) Years beginning on       the_____day of _____, 2015.

2)   If AMC complies with each of the Terms and Conditions of this Lease Agreement, then the Lease Agreement shall automatically renew at the end of its current term for an additional five (5) year term subject to the same terms, covenants, conditions and provisions as contained in this Lease Agreement.

3) If AMC does not comply with the Terms and Conditions of this Lease Agreement, the City may terminate the Agreement by giving AMC written notification that AMC shall have thirty (30) days to cure said default. Upon the expiration of this

thirty (30) day period and the failure to make such cure, the City shall have the right to use all legal means to remove AMC from the Real Estate.

## V.   USE OF PREMISES

It is further understood and agreed that:

1)   AMC herein may only use the leased portion of said Real Estate for all the operations engaged in by AMC as permissible by local zoning and ordinance, including but not limited to, the use of Landscaping Services Office, Landscape Equipment Storage and operation of several equipment storage Buildings.

2)   AMC shall make the following repairs, upgrades and capital improvements under this Lease Agreement:

   a. Engage in exterior repairs and upgrades to the existing structures including:
      i.   Clean-up and revitalization of landscape, tree trimming and removals, new tree plantings, mulching, horticultural services and the installation of an irrigation system if lawn conditions warrant;
      ii.  Clear, repair and/or replace the Real Estate's perimeter fence line, including the fence line being leveled and cleared up to the fencing, and the installation of a new security gate;
      iii. Clear and remove overgrowth around property and near structures to maintain the structural integrity of the buildings and provide a maintained appearance;
      iv.  Install asphalt millings throughout property subject to the written approval of the Director;
      v.   Repair and replace exterior building materials to a new condition; and,
      vi.  Repaint exterior of existing structures.

   b. Engage in interior repairs, upgrades, and improvements to the Existing Structures including:
      i.   Upgrade or replace flooring where determined necessary by the Director;
      ii.  Repaint and renovate office areas and interiors where determined necessary by the Director;
      iii. Upgrade and renovate restroom facilities;
      iv.  Installation of a kitchenette and renovation of break room; and,
      v.   Upgrade security, lighting and mechanicals.

   c. Pay all utilities including, but not limited to: electricity, heat, gas, water, cable, internet, and telephone service.

3)     All repairs, upgrades, or capital improvements to the Real Estate shall be subject to approval by the City. No additional buildings shall be erected upon said Real Estate without the written consent of the City herein and after proper notice, explanation, and complete information is provided to the City and consent of City is given. AMC shall, before performing repairs, upgrades, or capital improvements, submit to the Director a written proposal setting forth in detail the repairs, upgrades, or capital improvements to be made. The Director shall either approve or disapprove of the proposal within thirty (30) days.

4)     All repairs, upgrades or capital improvements to the Real Estate or Existing Structures shall be conducted by and at the expense of AMC and without any expense to the City.  AMC herein agrees to save harmless the City from any liability for development of such repairs, upgrades or capital improvements in the operation of the Real Estate for the uses set forth in subsection V., 1).

5)     The repairs, upgrades, and capital improvements required under this Lease Agreement shall be completed within in three (3) years of the execution of this Lease Agreement.

6)     It is further understood by the Parties that the City currently uses a portion of the Existing Structures for storage of appliances and other items. As a condition maintaining this Lease Agreement, AMC shall continue to allow the City to store these appliances and other items throughout the term of the Lease Agreement in an area designated and agreed by both parties which is to be non-intrusive to the operations of AMC.

7)     AMC shall be responsible for all regular maintenance of the Real Estate, Existing Structures, and all equipment located therein, including any improvements that AMC makes to the Real Estate.

## VI.   RENT

1)     AMC agrees to provide and the City agrees to accept as rent for the Real Estate, Landscaping Services of two City owned public parks which are Broome Park and Bonner Park, as further set forth in the Landscape Services Agreement between the City of Flint and Austin Morgan Companies (Exhibit B).

2)     In lieu of AMC providing Landscaping Services as set forth in Exhibit B, AMC shall pay to the City a monthly rent of Three Thousand Five Hundred Dollars ($3,500.00).

3)     In the event that AMC neither performs the Landscaping Services as described in Exhibit B, nor pays the monthly rental sum as set forth herein, it shall be considered a default and breach of this Lease Agreement. After written notification by the City, AMC shall have thirty (30) days to cure the default. Upon the expiration of this

thirty (30) day period, the City shall have the right to use all legal means to remove AMC from the Real Estate.

4)    As additional consideration for the use and occupancy of the Real Estate, AMC herein agrees to keep said premises in a clean and tidy condition at all times and the improvements thereof in a reasonable state of repair as set forth in this Lease Agreement. AMC will engage in activity on the Real Estate in a normal fashion and will not violate any law of the State of Michigan or ordinance of the County of Genesee, or the City in the use of said Real Estate.

## VII.    SALE OF REAL ESTATE

In the event that:

1)    The City desires to sell the Real Estate at the end of the first term of this agreement, the City hereby grants to AMC a Right of First Refusal to purchase said Real Estate. AMC shall have sixty (60) days to exercise its Right of First Refusal.

2)    In the event AMC does not exercise its Right of First Refusal as herein provided within sixty (60) days, The City hereby agrees that sale of said Real Estate to an independent third party shall be subject to this Lease Agreement, and the purchaser shall be bound by the terms and conditions as herein provided.

## VIII.    INSURANCE AND INDEMNITY

1)    To the fullest extent permitted by law, AMC agrees to defend, pay on behalf of, indemnify, and hold harmless the City and its elected and appointed officials, employees and volunteers, and others working on behalf of the City, against any and all claims, demands, suits, or losses, including all costs connected therewith, and for any damages which may be asserted, claimed, or recovered against or from the City and its elected and appointed officials, employees, volunteers, or others working on behalf of the City, for any reason including but not limited to personal injury, including bodily injury or death; and/or property damage, including loss of use thereof, which may arise out of AMC's acts, omissions, faults, and/or negligence, or that of any of AMC's employees, agents, and representatives in connection with the performance of this Lease Agreement.

2)    This Lease Agreement shall not commence until AMC has procured and provided evidence of the insurance required under this section. AMC shall have a minimum of 45 days after the signing of this Lease Agreement to produce the required insurance and the City shall provide the information on physical structures that is necessary to acquire said insurance. All coverages shall be placed with insurance companies licensed and admitted to do business in the State of Michigan unless otherwise approved by the City's Risk Management Director. Policies shall be reviewed

by the City's Risk Management Director for the completeness and limits of coverage. All insurance coverages shall be for the duration of the Lease Agreement.

    a. Commercial General Liability coverage of not less than One Million ($1,000,000.00) Dollars combined single limit with the City, and including all elected and appointed officials, all employees and volunteers, all boards, commissions and/or authorities and their board members, employees and volunteers, named as "Additional Insured." This coverage shall be written on an ISO occurrence basis form and shall include: Bodily Injury, Personal Injury, Property Damage, Contractual Liability, Products and Completed Operations, Independent Contractors; Broad Form Commercial General Liability Endorsement, (XCU) Exclusions deleted and a per contract aggregate coverage.  This coverage shall be primary to the Additional Insureds, and not contributing with any other insurance or similar protection available to the Additional Insureds, whether said other available coverage be primary, contributing or excess.

    b. Workers' Compensation Insurance in accordance with Michigan statutory requirements including Employers Liability coverage.

    c. Any deductibles or self-insured retention must be declared to and approved by the City.  In addition, the total dollar value of all claims paid out on the policy shall be declared.  At the option of the City, either; the insurer shall reduce or eliminate such deductibles or self-insured retention as respects the City, its officials, employees, agents and volunteers; or Lessee shall procure a bond guaranteeing payment of losses and related investigation, claim administration and defense expense.

    d. AMC shall furnish the City with two certificates of insurance for all coverages requested and with original endorsements for those policies requiring the Additional Insured status.  All certificates of insurance must provide the City with not less than thirty (30) days advance written notice in the event of cancellation, non-payment of premium, non-renewal or any material change in policy coverage.  In addition, the wording "endeavor to" and "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" must be removed from the standard ACORD cancellation statement.  These certificates must identify the City, Risk Management Division as the "Certificate Holder."  AMC must provide, upon request, certified copies of all insurance policies.  If any of the above coverages expire during the term of this Lease Agreement, AMC shall deliver renewal certificates and/or policies to the City at least ten (10) days prior to the expiration date.

## IX.   ARBITRATION

1)   **Arbitration**: AMC agrees to submit to arbitration all claims, counterclaims, disputes and other matters in question between the parties hereto arising out of or relating to this Lease Agreement or the breach thereof. AMC's agreement to arbitrate shall be specifically enforceable under the prevailing law of any court having jurisdiction to hear such matters. AMC's obligation to submit to arbitration shall be subject to the following provisions:

a. Notice of demand for arbitration must be submitted to the City in writing within a reasonable time after the claim, dispute or other matter in question has arisen. A reasonable time is hereby determined to be fourteen (14) days from the date the party demanding the arbitration knows or should have known the facts giving rise to their claim, dispute or question. In no event may the demand for arbitration be made after the time when institution of legal or equitable proceedings based on such claim dispute or other matters in question would be barred by the applicable statute of limitation.

b. Within fourteen (14) days from the date demand for arbitration is received by the City, each party shall submit to the other the name of one person to serve as an arbitrator. The two arbitrators together shall then select a third person. The three together shall then serve as a panel in all proceedings. Any decision concurred in by a majority of the three shall be a final binding decision.

c. The final decision rendered by said arbitrators shall be binding and conclusive and shall be subject to specific enforcement by a court of competent jurisdiction.

d. The costs of the arbitration shall be split and borne equally between the parties and such costs are not subject to shifting by the arbitration.

## X.   ACCESS TO REAL ESTATE

1)   The City shall have the right to enter upon the Real Estate for the purpose of inspecting the same to determine whether the covenants of this Lease Agreement are being complied with by AMC and for any other reasonable purposes on the part of the City, including to access and retrieve the appliances and other items being stored on the Real Estate.

2)   The City shall have the right to enter upon the Real Estate for the purpose of ingress and egress to any of the adjoining properties.

3) The owners of any of the adjoining properties or property which would need to use the above described Real Estate for the purpose of access shall have the Right of ingress and egress across said Real Estate.

## XI. NOTICES

1) Whenever, under this Lease Agreement, a provision is made for notice of any kind, such notice shall be in writing and signed by or on behalf of the party giving or making the same, and it shall be deemed sufficient notice and service thereof if such notice is sent to either party by registered mail, certified mail, or currier, prepaid to the following addresses:

| If to The City: | City Clerk, 1101 S. Saginaw Street Flint, MI 48502 Planning and Development, 1101 S. Saginaw Street Flint, MI 48502 |
|---|---|
| If to AMC: | Christie Rasins, PO Box 1315, Clarkston, Michigan, 48347 |

## XII. SURRENDER OF POSSESSION

1) At the expiration of this Lease Agreement created hereunder, whether by lapse of time or otherwise, AMC shall surrender the Real Estate in good condition and repair, reasonable wear and tear and acts of God excepted.

2) No holding over by AMC, after the termination of this Lease Agreement, shall operate to renew this Lease Agreement unless there is written agreement between the parties providing for such extension or renewal; in case of holding over by AMC without such written agreement providing for extension or renewal, the City may treat AMC's occupancy as being a tenancy from month-to-month.

## XIII. GENERAL PROVISIONS

1) This Lease Agreement represents the entire agreement between the Parties with respect to the subject matter hereto, and supersedes all prior agreements, conversations, and understandings with respect hereto. Any amendment to this Lease Agreement shall be in writing and signed by the Parties.

2) Failure of the City to require performance of any provision herein shall not affect the City's right to require performance of any provision thereafter, nor shall such a waiver constitute a waiver of any subsequent breach of this Lease Agreement.

3) If any provision of this Lease Agreement is found to be invalid or unenforceable, the remainder of the Lease Agreement shall remain in full force and effect as though the invalid or unenforceable provision had never been included.

Page 8 of 10

4)     This Lease Agreement is valid and enforceable with electronic or facsimile signatures, and may be executed in multiple counterparts, all of which together shall form one agreement.

5)     The covenants, agreements and obligations herein contained shall be extended to bind, and inure to the benefit not only of the parties hereto, but also their respective personal representatives, heirs, and successors, and assigns.

## XIV.   GOVERNING LAW

1)     All questions regarding the validity, intention and meaning of this Lease Agreement or any modifications of it relating to the rights and obligations of the parties, or alleged breaches thereof, will be construed and resolved under the laws of the State of Michigan in courts of competent jurisdiction located within the State of Michigan.

## XV.   AUTHORITY TO EXECUTE

1)     The undersigned officer(s) of AMC hereby certify that this Lease Agreement is duly executed pursuant to proper Corporate Authority.

2)     The undersigned persons executing this Lease Agreement for and on behalf of the City hereby certify that this Lease Agreement is duly executed pursuant to their Lawful Authority.

## XVI.   QUIET ENJOYMENT

1)     If AMC shall perform all the covenants and agreements herein provided to be performed on AMC's part, AMC  shall, at all times during the term of this Lease Agreement, have the quiet enjoyment of possession of the Real Estate without any manner of hindrance form the City or any portion lawfully claimed under the City.

*[Signatures on Next Page]*

Page 9 of 10

IN WITNESS WHEREOF, the parties have executed this Lease Agreement this

_____ day of _____, 2015

CONTRACTOR:
**AUSTIN MORGAN COMPANIES**

Christie Rasins
**President**

CITY OF FLINT, a Michigan Municipal Corp.

Dayne Walling
Mayor

Natasha L. Henderson
City Administrator

APPROVED AS TO FORM:

Peter M. Bade
City Attorney

S:\DIR\CONTRACT\Sun John Morgan Lease Agreement Re Parks Bldg 5.6.15.docx



**936 E. Boulevard Dr.**
**Parcel # 41-07-204-031**
Year Built: 1959
Square Footage: 22,466
3.5 Acres

**Legal Description:**
Boulevard Park, Lots 42 to 49 Inclusive,
Also Lots 70 to 81 Inclusive.

The subject property is a 22,466 square foot commercial property on 3.5 acres.  The main building is 12,066 square feet of garage with some office area.  There is also a 5,600 square foot storage garage, a 4,800 square foot pole barn and two gas pumps with an above ground tank.  It is located in a mixed use area near residential, commercial and industrial properties.  The property is currently vacant and in average condition.  Sales of similar properties were analyzed to estimate the current market value.  The results of this analysis yielded a price per square foot of $10.00 for warehousing and $20.00 for garage/service.  The estimated market value should fall in a range between $10 and $15 price per square foot or $225,000 to $335,000.

**Exhibit B**

**Landscape Services Agreement between the**
**City of Flint and Austin Morgan Companies**

This Agreement, entered into on this _____ day of _____, 2015, is between the City of Flint, located at 1101 S. Saginaw Street, Flint, Michigan 48502 (hereinafter referred to as "City") and the Austin Morgan Companies, LLC P.O. Box 1315, Clarkston, Michigan 48347 (hereinafter referred to as "AMC"); collectively referred to as the "Parties." In consideration of the mutual covenants contained herein, the consideration of which is hereby stipulated to, the Parties mutually agree to the following terms:

## ARTICLE I. SCOPE OF SERVICES

1. AMC shall provide all of the materials, labor, equipment, supplies, machinery, tools, superintendence, insurance and other accessories and services necessary to perform the mowing and trimming of turf areas for the City, to maintain the City owned park parcels, **Broome Park, located at 3200 Tuxedo Ave, Flint, Michigan 48507 and Bonner Park located at 5300 North Street, Flint, Michigan 48505.**

2. Maintenance of the parks shall be as specified in the City's "Mowing Guidelines," referred to herein as **Exhibit A**, and as set forth by this Agreement.

3. AMC shall perform the work in accordance with the Standard General Conditions and any Special Conditions provided for in this Agreement and warrants to the City that all materials and equipment furnished under this Agreement will be new unless otherwise specified and that all work will be of good quality, free from faults and defects and in conformance with the contract documents.

4. All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. In addition to any other remedies the City may have, if, within one (1) year of the date of substantial completion of work, or within one (1) year after acceptance by the City, or within such longer period of time as may be prescribed by law, any work is found to be defective or not in accord with the contract documents, AMC shall correct promptly after receipt of a written notice from the City to do so, unless the City has previously given AMC a written acceptance of such condition. AMC will be responsible for removal of all trash and debris before said property is mowed and maintained. Mowing shall take place between May 1st and October 31st of each year.

5. AMC must be in communication with the City Planning and Development Department on a monthly basis in regards to its proposed schedule. However, AMC should also immediately communicate with the City as problems or adjustments arise, including those related to illegal dumping or other activities AMC discovers in the parks. In the case where a volunteer group has mowed a property prior to your arrival, AMC will simply move to the next property at no cost to the City. AMC is responsible for reporting to the Planning and

Development Department by E-mail – via amoore@cityofflint.com throughout the duration of this Agreement.

## ARTICLE II. TERM

6. The Term of this Agreement shall be for ten (10) years from the date of its execution.

7. This Agreement shall automatically renew at the end of its current term for an additional (5) year term unless either Party gives written notice of its intent to terminate the Agreement.

## ARTICLE III. CONTRACT SUM

8. The expense of making good any damages to the premises and the removal and replacement of materials or work rejected or condemned by the City as failing to conform with the requirements of the plans and specifications, which in the opinion of the City has resulted from a lack of reasonable diligence on the part of AMC, shall not be charged as items of cost.

## ARTICLE IV. OTHER CONDITIONS OR SERVICES

9. **Applicable Law**: This Agreement shall be governed by and in accordance with the laws of the State of Michigan pertaining to contracts made and to be performed in this state.

10. **Arbitration**: AMC agrees to submit to arbitration all claims, counterclaims, disputes and other matters in question between the Parties hereto arising out of or relating to this agreement or the breach thereof. AMC's agreement to arbitrate shall be specifically enforceable under the prevailing law of any court having jurisdiction to hear such matters. AMC's obligation to submit to arbitration shall be subject to the following provisions:

    (a) Notice of demand for arbitration must be submitted to the City in writing within a reasonable time after the claim, dispute or other matter in question has arisen. A reasonable time is hereby determined to be fourteen (14) days from the date the Party demanding the arbitration knows or should have known the facts giving rise to their claim, dispute or question. In no event may the demand for arbitration be made after the time when institution of legal or equitable proceedings based on such claim, dispute, or other matters in question would be barred by the applicable status of limitation.

    (b) Within fourteen (14) days from the date demand for arbitration is received by the City, each Party shall submit to the other the name of one person to serve as an arbitrator. The two arbitrators together shall then select a third person, the three together shall then serve as a panel in all proceedings. Any decision concurred in by a majority of the three shall be a final binding decision.

(c)      The final decision rendered by said arbitrators shall be binding and conclusive and shall be subject to specific enforcement by a court of competent jurisdiction.

(d)      The costs of the arbitration shall be split and borne equally between the Parties and such costs are not subject to shifting by the arbitrator.

11. **City Income Tax Withholding**: AMC and any subcontractor engaged in this Agreement shall withhold from each payment to its employees the tax on their compensation subject to tax, after giving effect to exemptions as follows:

(a)      Residents of the City:
At a rate equal to one per cent (1%) of all compensation paid to the employee who is a resident of the City; or

(b)      Non-residents:
At a rate equal to one-half of one per cent (1/2%) of the compensation paid to the employee for work done or services performed in the City.

These taxes shall be held in trust and paid over to the City in accordance with City ordinances and State law. Any failure to do so shall constitute a substantial and material breach of contract.

12. **Compensation/ Payment**: In consideration of the services to be performed by AMC under this Agreement, the City shall lease to AMC the property known as the "parks shop," located 936 E. Boulevard Drive, Flint MI, parcel number 41-07-204-031, which is further described in **Exhibit B**. The terms of the lease agreement between the City and AMC are set forth in **Exhibit C, Lease Agreement between City of Flint and Austin Morgan Companies.**

13. **Contract Documents**: The invitation for bids, instructions to bidders, proposal affidavit, addenda (if any), statement of bidder's qualifications (when required), general conditions, special conditions, performance bond, labor and material payment bond, insurance certificates, technical specifications, and drawings, together with this document, form the Agreement, and they are as fully a part of the Agreement as if attached hereto or repeated herein.

14. **Disclaimer of Contractual Relationship**: Nothing contained in the Contract Documents shall create any contractual relationship between the City and any Subcontractor or Sub-subcontractor.

15. **Effective Date**: This contract shall be effective upon the date that it is executed by all Parties hereto and at which time actual possession of said property located at 936 E. Boulevard Drive, Flint MI has been assumed by AMC. Also upon which time this contract has been fully executed, initial consideration shall be given to AMC if deemed necessary as a result of prior scheduled contractual obligations. Should this occur, both parties shall agree to an official service start date independent of this agreement.

16. **Force Majeure**: Neither Party shall be responsible for damages or delays

caused by Force Majeure or other events beyond the control of the other Party and which could not reasonably have anticipated or prevented. For purposes of this Agreement, Force Majeure includes, but is not limited to, adverse weather conditions, floods, epidemics, war, riot, strikes, lockouts, and other industrial disturbances; unknown site conditions, accidents, sabotage, fire, and acts of God. Should Force Majeure occur, the Parties shall mutually agree on the terms and conditions upon which services may continue.

17. **Good Standing**: AMC must remain current and not be in default of any obligations due the City, including the payment of taxes, fines, penalties, licenses or other monies due to the City. Violations of this clause shall constitute a substantial and material breach of this Agreement. Such breach shall constitute good cause for termination of this Agreement.

18. **Indemnification**: To the fullest extent permitted by law, AMC agrees to defend, pay on behalf of, indemnify, and hold harmless the City, its elected and appointed officials, employees and volunteers and others working on behalf of the City including the Project Manager, against any and all claims, demands, suits, or losses, including all costs connected therewith, and for any damages which may be asserted, claimed or recovered against or from the City, its elected and appointed officials, employees, volunteers or others working on behalf of the City, by reason of personal injury, including bodily injury or death and/or property damage including loss of use thereof, which may arise as a result of their acts, omissions, faults and negligence or of any of their employees, agents and representatives in connection with the performance of this Agreement.

19. **Independent Contractor**: No provision of this Agreement shall be construed as creating an employer-employee relationship. It is hereby expressly understood and agreed that AMC is an "independent contractor" as that phrase has been defined and interpreted by the courts of the State of Michigan and, as such, AMC is not entitled to any benefits not otherwise specified in this Agreement.

20. **Insurance/Worker's Compensation**: AMC shall not commence work under this Agreement until they have procured and provided evidence of the insurance required under this section. All coverage shall be obtained from insurance companies licensed and authorized to do business in the State of Michigan. Policies shall be reviewed by the City for completeness and limits of coverage. All coverage shall be with insurance carriers acceptable to the City. AMC shall maintain the following insurance coverage for the duration of the Agreement.

(a) Commercial General Liability coverage of not less than one million dollars ($1,000,000) combined single limit with the City, and including all elected and appointed officials, all employees and volunteers, all boards, commissions and/or authorities and their board members, employees and volunteers, named as "Additional Insured." This coverage shall be written

on an ISO occurrence basis form and shall include: Bodily Injury, Personal Injury, Property Damage, Contractual Liability, Products and Completed Operations, Independent Contractors; Broad Form Commercial General Liability Endorsement, (XCU) Exclusions deleted and a per contract aggregate coverage. This coverage shall be primary to the Additional Insured, and not contributing with any other insurance or similar protection available to the Additional Insured, whether said other available coverage be primary, contributing or excess.

(b)   Workers' Compensation Insurance in accordance with Michigan statutory requirements including Employers Liability coverage.

(c)   Commercial Automobile Insurance in the amount of not less than one million dollars ($1,000,000) combined single limit per accident with the City, and including all elected and appointed officials, all employees and volunteers, all boards, commissions and/or authorities and their board members, employees and volunteers, named as an "Additional Insured." This coverage shall be written on ISO business auto forms covering Automobile Liability, code "any auto."

(d)   Professional Liability - Errors and Omissions. All projects involving the use of Architects, civil engineers, landscape design specialists and other professional services must provide the City with evidence of Professional Liability coverage in an amount not less than one million dollars ($1,000,000). Evidence of this coverage must be provided for a minimum of three years after project completion. Any deductibles or self-insured retention must be declared to and approved by the City. In addition, the total dollar value of all claims paid out on the policy shall be declared. At the option of the City, either the insurer shall reduce or eliminate such deductibles or self-insured retention with respect to the City, its officials, employees, agents and volunteers; or AMC shall procure a bond guaranteeing payment of losses and related investigation, claim, administration and defense expenses.

AMC shall furnish the City with two certificates of insurance for all coverage requested with original endorsements for those policies requiring the Additional Insured. All certificates of insurance must provide the City with not less than 30 days advance written notice in the event of cancellation, non-payment of premium, non-renewal or any material change in policy coverage. In addition, the wording "Endeavor to" and "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" must be removed from the standard ACORD cancellation statement. These certificates must identify the City, Risk Management Division as the "Certificate Holder." AMC must provide, upon request, certified copies of all insurance policies. If any of the above policies are due to expire during the term of

this Agreement, AMC shall deliver renewal certificates and copies of the new policies to the City at least ten days prior to the expiration date. AMC shall ensure that all subcontractors utilized obtain and maintain all insurance coverage required by this provision.

21. **Laws and Ordinances**:  AMC shall obey and abide by all of the laws, rules and regulations of the Federal Government, State of Michigan, Genesee County and the City, applicable to the performance of this Agreement, including, but not limited to, labor laws, and laws regulating or applying to public improvements.

22. **Modifications**:  Any modifications to this Agreement must be in writing and signed by the Parties or authorized employee, officer, board or council representative of the Parties authorized to make such contractual modifications under State law and local ordinances.

23. **No Third-Party Beneficiary**: No contractor, subcontractor, mechanic, material man, laborer, vendor, or other person dealing with AMC shall be, nor shall any of them be deemed to be, third-party beneficiaries of this Agreement, but each such person shall be deemed to have agreed that they shall look to AMC as their sole source of recovery if not paid.  Except as provided by law, or as otherwise agreed to in writing between the City and such person, each such person shall be deemed to have waived in writing all rights to seek redress from the City under                 any                 circumstances                 whatsoever.

24. **Non-Assignability**:  AMC shall not assign or transfer any interest in this Agreement without the prior written consent of the City provided, however, that claims for money due or to become due to AMC from the City under this Agreement may be assigned to a bank, trust company, or other financial institution without such approval.  Notice of any such assignment or transfer shall be furnished promptly to the City.

25. **Non-Disclosure/Confidentiality**: AMC agrees that the documents identified herein as the contract documents are confidential information intended for the sole use of the City and that AMC will not disclose any such information, or in any other way make such documents public, without the express written approval of the City or the order of the court of appropriate jurisdiction or as required by the laws of the State of Michigan.

26. **Non-Discrimination**: AMC shall not discriminate against any employee or applicant for employment with respect to hiring or tenure; terms, conditions, or privileges of employment; or any matter directly or indirectly related to employment, because of race, color, creed, religion, ancestry, national origin, age, sex, height, weight, disability or other physical impairment, marital status or status with respect to public assistance.

27. **Notices:**  Notices to the City shall be deemed sufficient if in writing and mailed, postage prepaid, addressed to **Megan Hunter, Director, Planning and Development 1101 S. Saginaw Street, Flint, Michigan 48502 and Inez Brown, City Clerk, City of Flint, 1101 S. Saginaw Street, Flint, Michigan 48502**, or to such other address as may be designated in writing by the City from time to time. Notices to Contractor shall be deemed sufficient if in writing and mailed, postage prepaid, addressed to **Austin Morgan Companies, P.O. Box 1315 Clarkston, Michigan, 48347** or to such other address as may be designated in writing by the Contractor from time to time.

28. **R-12 Prevailing Wages:** AMC is aware of City Resolution #R-12 dated April 8, 1991, which is hereby incorporated by reference, and agrees to abide by all of the applicable covenants and requirements set forth in said resolution.

29. **Records Property of City:** All documents, information, reports and the like prepared or generated by AMC as a result of this Agreement shall become the sole property of the City.

30. **Severability:**  In the event that any provision contained herein shall be determined by a court or administrative tribunal to be contrary to a provision of state or federal law or to be unenforceable for any reason, then, to the extent necessary and possible to render the remainder of this Agreement enforceable, such provision may be modified or severed by such court or administrative tribunal so as to, as nearly as possible, carry out the intention of the Parties hereto, considering the purpose of the entire Agreement in relation to such provision.  The invalidation of one or more terms of this Agreement shall not affect the validity of the remaining terms.

31. **Standards of Performance:**  AMC agrees to exercise independent judgment and to perform its duties under this Agreement in accordance with sound professional practices.  The City is relying upon the professional reputation, experience, certification and ability of AMC. AMC agrees that all of the obligations required by them under this Agreement shall be performed by them or by others employed by them and working under their direction and control.  The continued effectiveness of this Agreement during its term or any renewal term shall be contingent upon AMC maintaining its certification in accordance with the requirements of the State law.

32. **Subcontracting:**  No subcontract work, if permitted by the City, shall be started prior to the written approval of the subcontractor by the City.  The City reserves the right to accept or reject any subcontractor.

33. **Termination:**  This Agreement may be terminated by the City for failure to comply with the Terms and Conditions as established herein with thirty (30) days written notification to cure said default.  Upon the expiration of this thirty (30) day

period, and in the event such cure should not occur, AMC shall give to the City all pertinent records, data and information created up to the date of termination to which the City, under the terms of this Agreement is entitled.

34. **Time of Service/Performance**:  AMC's services shall commence immediately upon receipt of the notice to proceed and shall be carried out forthwith and without reasonable delay as established from within Article IV, sect.15 of this agreement.

35. **Union Compliance**:   AMC agrees to comply with all regulations and requirements of any national or local union(s) that may have jurisdiction over any of the materials, facilities, services, or personnel to be furnished by the City.

36. **Waiver:**   Failure of the City to insist upon strict compliance with any of the terms, covenants, or conditions of this Agreement shall not be deemed a waiver of any term, covenant, or condition.  Any waiver or relinquishment of any right or power hereunder at any one or more times shall not be deemed a waiver or relinquishment of that right or power at any other time.

37. **Whole Agreement/Identification of Contract Documents**: This written Agreement and the documents cited herein embody the entire Agreement between the Parties  Any additions, deletions or modifications hereto must be in writing and signed by both Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement this ___ day of
_____, 2015

CONTRACTOR:
AUSTIN MORGAN COMPANIES


Christie Rasins
President


CITY OF FLINT, a Michigan Municipal Corp :


Dayne Walling                           Natasha L. Henderson
Mayor                                   City Administrator

APPROVED AS TO FORM:


Peter M. Bade
City Attorney

S:\BR CONTRACTS\Austin Morgan\Austin Morgan Mowr Contract 6 9 15.docx



NORTH

ADDITIONAL NOTES

**PARK NAME**

# BONNER PARK

**MOWING GUIDELINES**

Turf areas are to be mowed every 7-10 days and not to exceed more than three mowing applications per month. Turf mowing heights are to be set between 1.5" and 4.5" any mowing that occurs below 1.5" and results in scalping damage to turf crowns is unacceptable. According to the map, priority 3 turf areas are to be mowed every 25-30 days at heights that produce aesthetically pleasing results. If priority 1 areas are mostly shade and turf vigor is low, mowing heights of 4" can be acceptable. If priority 3 areas have vigorous growing rates this requires higher cutting heights such as 5" or greater to minimize clumping left on turf surfaces. All objects protruding from the turf surface (i.e. signage, poles, trees, playground equipment, etc) are to be weed whipped during every new mowing application. Sidewalks and basketball courts are to be blown free of all mowing debris such as grass clippings, leaves, sticks, etc. Under no circumstances are areas with standing water to be mowed that result in distraction of turf or the soil profile by mowing equipment. In historically dry months of July and August, turf should not be mowed if signs of drought induced dormancy are occurring in turf. During these situations Bonner Park should only be mowed twice a month. 15 mows per year are recommended for this park. Three of which occur in May, June, and September, and two mowings occur in July, August and October.

**PARK ACREAGE**
21 ACRES

**UNMOWED ACREAGE**
3.5 ACRES

**PRIORITY 1 ACREAGE**
14 ACRES

**PRIORITY 3 ACREAGE**
2.4 ACRES

**LEGEND:**

PRIORITY #1
14.1 ACRES

PRIORITY #3
2.4 ACRES

PAVED OR OTHER
HARD SURFACE

BORDERING LOT

UNMOWED

DEPARTMENT

CITY OF FLINT
PARKS DEPARTMENT

PROJECT

PARKS MOWING MAINTENANCE PLAN

PROJECT
DATE

JANUARY 2010

PARK NAME

# BROOME PARK

## MOWING GUIDELINES:

Priority 1 turf areas are to be mowed every 7-10 days. Turf mowing heights are to be set between 1.5" and 4". any mowing that results in scalping, damage to turf crowns is unacceptable. According to the map, priority 1 turf areas are to be mowed every 7.5-10 days, at heights that produce aesthetically pleasing results. If priority 3 areas are mostly shade and turf vigor is low, mowing heights at 4" can be acceptable. If priority 3 areas have vigorous growing rates this requires higher cutting heights such as 5" or greater to minimize clippings left on turf surfaces. All object penetrating from the turf surface i.e. signage, poles, trees, playground equipment, etc.) are to be weed whipped during every mow. All hard surfaces are to be blown free of all mowing debris such as grass clippings, leaves, sticks, etc. Under no circumstances are areas with saturated soils to be mowed that result in destruction of turf or the soil profile by mowing equipment. In historically dry months of July and August, turf should not be mowed if signs of drought reduced dormancy are occurring in turf. During these situations drought areas should only be mowed twice a month. Any turf that is irrigated regularly should still be mowed at proper heights every week 20 mows per year are recommended for this park starting weekly in May and continuing through September.

| PARK ACREAGE | PRIORITY 1 ACREAGE | PRIORITY 3 ACREAGE |
|---|---|---|
| 77 ACRES | 41.5 ACRES | 26 ACRES |

LEGEND

PRIORITY #1
41.5 ACRES

PRIORITY #3
26 ACRES

PAVED OR OTHER HARD SURFACE

BORDERING LOT

PROJECT: PARKS MOWING MAINTENANCE PLAN

DEPARTMENT
CITY OF FLINT
PARKS DEPARTMENT

PROJECT DATE: JANUARY 2010



NORTH

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNT OF GENESEE**

CITY OF FLINT.,
    A municipal corporation.

                                  Case No. 19-113048-CH

    Plaintiff,

                                    JUDGE JOSEPH J. FARAH

v

AUSTIN MORGAN COMPANIES.,             **STIPULATED ORDER**
    A limited liability company.
    Defendant.

---

ANGELA WHEELER (P64079)        CHRISTINA RASINS
WHITNEY S. FRAZIER-JENKINS (P76632)  Austin Morgan Companies
Attorneys for Plaintiff            Pro Se, Sole Partner
Assistant City Attorney           PO Box 1159
City of Flint Law Department       Flint, MI 48501
1101 S. Saginaw St., 3rd Floor     810-407-7495
Flint, MI 48502
(810) 766-7146
wfrazierjenkins@cityofflint.com

At a session of said Court
Held on the _____ of July, 2019
At the Courthouse, City of Flint
Genesee County

**PRESENT: HONORABLE JOSEPH J FARAH, CIRCUIT COURT JUDGE**

    WHEREFORE, the parties, City of Flint and Austin Morgan companies, by and through their respective counsel, have reached a stipulation, the terms of which are incorporated in this order, and consent to entry of this order as evidenced by the signatures of the parties and their counsel, **NOW THEREFORE:**

    **IT IS ORDERED,** that Plaintiff, City of Flint, will provide Defendant, Austin Morgan *of garage bays* Companies, 72 hours written notice for requested access to all existing structures at 986 East Boulevard, Flint, Michigan 48503, and said notice will include the intended purpose of the visit to the property and the maximum number of people who will be accessing the property. *All individuals entering the property will be City of Flint employees for the purpose of inspecting wall of the main building for potential entrance.*

Page 1 of 2

**IT IS FURTHER ORDERED** that Defendant grant City of Flint access to all existing structures at 936 East Boulevard, Flint, Michigan 48503 after receiving 72 hours notice or provide in writing a reasonable alternative date that the City of Flint may access all existing structures at the property no later than Tuesday, July 30, 2019.

Dated: 7/24/19

_____
Honorable Joseph J. Farah
Circuit Court Judge

Approved as to Content
and Form:

_____     7/24/19
Christina Rasins                       Date
Austin Morgan Companies

_____     7/24/19
Whitney Frazier-Jenkins (P76632)       Date
Assistant City Attorney

Page **2** of **2**

# STATE OF MICHIGAN

## IN THE 7th CIRCUIT COURT FOR THE COUNTY OF GENESEE

CITY OF FLINT

      Plaintiff,

v.

AUSTIN MORGAN COMPANIES

      Defendant.

Case No: 19-113048-ch

HON. JOSEPH J. FARAH

_____/

## **DEFENDANTS NOTICE OF FILING OF NOTICE OF REMOVAL**

TO THE CLERK OF THE 7TH CIRCUIT COURT OF GENESEE COUNTY:

     In accordance with 28 U.S.C.§1446(d), please take notice that Defendant, Austin Morgan Companies, filed a Notice of Removal (Exhibit A), removing this action from this Court to the United States District Court for the Eastern District of Michigan.  See 28 U.S.C.§1446(d) of which defendant has given written notice to all adverse parties and filed a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further.

Respectfully submitted,

Austin Morgan Companies
Christina Rasins, In Pro Se
PO Box 1159 • Flint, Mi 48501

Dated: December 2, 2109

JS 44 (Rev. 09/19)

# CIVIL COVER

Case 2:19-cv-13543

Judge: Berg, Terrence G.
MJ: Hluchaniuk, Michael J.
Filed: 12-02-2019 At 12:02 PM
REMOVAL- CITY OF FLINT v AUSTIN MOR
GAN (sk)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
City of Flint

**DEFENDANTS**
Austin Morgan Companies

**(b)** County of Residence of First Listed Plaintiff   Genesee
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Genesee
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Angela Wheeler(P64079)
1101 South Saginaw St., Flint, MI 48501

Attorneys *(If Known)*
Christina Rasins, In Pro Se
PO Box 1159, Flint, MI 48501

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☒ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 4331
Brief description of cause:
Federal Question of National Environemental Policy Act

## VII. REQUESTED IN COMPLAINT:
☐  CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                              DOCKET NUMBER

DATE   12/2/19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

PURSUANT TO LOCAL RULE 83.11

1.　　　　　Is this a case that has been previously dismissed?　　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☒ No

　　If yes, give the following information:

　　Court: _____

　　Case No.: _____

　　Judge: _____


2.　　　　　Other than stated above, are there any pending or previously
　　　　　　discontinued or dismissed companion cases in this or any other　　☐ Yes
　　　　　　court, including state court? (Companion cases are matters in which　☒ No
　　　　　　it appears substantially similar evidence will be offered or the same
　　　　　　or related parties are present and the cases arise out of the same
　　　　　　transaction or occurrence.)

　　If yes, give the following information:

　　Court: _____

　　Case No.: _____

　　Judge: _____


Notes : _____